UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

TIRON WASHINGTON, JR.,

        Plaintiff,

        v.                             Case No. 25-cv-1609-bhl

VITAL CORE HEALTH STRATEGIES,
KATIE V.,
DR. TROTTMAN,
KENOSHA COUNTY,
NATASHA VILLEGAS,
MS. SCHEIBER, and
JANE DOE,

        Defendants.

---

## SCREENING ORDER

---

Plaintiff Tiron Washington, Jr., who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated while he was incarcerated at the Kenosha County Pretrial Facility. On November 24, 2025, Washington filed an amended complaint, which he is permitted to do once at this stage of the case without the Court's permission. *See* Fed. R. Civ. P. 15. After Washington failed to timely pay the initial partial filing fee, on January 12, 2026, the Court denied Washington's motion for leave to proceed without prepaying the filing fee and dismissed the case. On February 18, 2026, Washington filed a motion for reconsideration asking the Court to vacate the dismissal because he claimed he did not receive the Court's order about his obligation to pay the initial partial filing fee. Washington later paid the initial partial filing fee on March 18, 2026. Based on Washington's representations and subsequent payment of the fee, the Court will grant his motion for reconsideration, vacate the January 12, 2026 dismissal order and judgment, and grant Washington's motion for leave to proceed without prepaying the filing fee. The Court will also screen the amended complaint, as required by 28 U.S.C. §1915A.

## SCREENING OF THE AMENDED COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. §1915A(b).  In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted.  To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2).  It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556.  "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE AMENDED COMPLAINT

According to Washington, he was on parole in Illinois when he was arrested for a homicide in Kenosha County.  In June 2022, he was transported to the Kenosha County Pretrial Facility pending trial.  On May 27, 2023, he injured his ulnar nerve in a fight with another inmate. Washington states that following the injury he experienced numbness, burning, tingling, and sharp pains in his arm and hand throughout the day and night; his grip strength was also significantly impacted.  He states that physical therapy did not help, so a provider referred him to an offsite

2

specialist. After an EMG, the offsite specialist diagnosed Washington with cubital tunnel syndrome and, on April 2, 2025, referred Washington to an orthopedist for an evaluation for surgery. Washington asserts that the surgery was supposed to occur within three months with Washington returning to the specialist three months later for a checkup.

Washington states that he wrote numerous requests asking for surgery and complaining about the pain. He states that Dr. Trottman, Nurse Natasha Villegas, and Nurse Practitioner Katie V failed to contact the orthopedist's office in a timely manner. According to Washington, at an October 2025 follow-up appointment, he informed the specialist that he still had not had surgery. Washington asserts that the specialist then entered an emergency referral to the orthopedist as the condition of his arm had worsened. On October 28, 2025, Washington informed Nurse Practitioner Katie that he was "exercising his constitutional rights." He states that she charged him $8.00 to fill a prescription that had not previously been filled because Washington was initially representing himself in his criminal case and could not be under the influence of any drugs. *See* Dkt. No. 1 at 3. Washington believed he should not have been charged for the medication, so he submitted an inmate complaint, but he never received a response.

Washington was seen by the orthopedist on November 14, 2025. He states that upon return to the facility, he asked Nurse Natasha if he could see his medical records and then expressed to her that he believed the recommended treatment was questionable. It is not clear, but it appears the orthopedist recommended he be given a blanket to help keep his arm straight while he slept. Washington states that he asked her to put the order in for the blanket right away, but she told him it had to be approved by the nurse practitioner first. A different nurse eventually entered the order, and Washington asserts that he received an extra blanket on November 16, 2025. On January 5, 2026, Washington was convicted and is now in the custody of the State of Wisconsin.

### THE COURT'S ANALYSIS

Washington was a convicted prisoner serving a sentence while he waited for trial on new charges, so his medical care claim arises under the Eighth Amendment. To state a claim under the Eighth Amendment, a plaintiff must allege that prison officials intentionally disregarded a known, objectively serious medical condition that posed an excessive risk to the plaintiff's health. *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015) (citations omitted). "A delay in treatment may show deliberate indifference if it exacerbated [the plaintiff's] injury or unnecessarily prolonged his pain." *Id.* at 777-78. With the foregoing legal principles in mind, Washington may proceed on a

claim against Dr. Trottman, Nurse Natasha Villegas, and Nurse Practitioner Katie based on allegations that they delayed following a specialist's initial recommendation that Washington be referred to an orthopedist for consideration of surgery to repair a wrist injury. Washington asserts that he experienced significant pain and that his condition worsened during the six-month delay.

Washington does not, however, state a claim against Nurse Natasha based on allegations that she deferred to a policy requiring that treatment recommendations by an offsite specialist be approved by a provider before being implemented. Nurse Natasha did not ignore Washington's request for a blanket; she referred the recommendation to a provider with authority to approve it. Moreover, Washington asserts that he had been experiencing pain for *years* and that the orthopedist recommended that he be provided a blanket for comfort (not treatment). Washington explains he received the blanket two days later and it was ineffective to address his pain, so he suffered no harm from this short delay. *See Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015).

Nor does Washington state a claim against Vital Core Health Strategies. Private entities acting to fulfill government duties are not vicariously liable for the conduct of their employees. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a claim against a private entity, a plaintiff must allege direct liability by showing that the constitutional violation was caused by (1) an express policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by an agent with final policymaking authority. *Milestone v. City of Monroe, Wis*., 665 F.3d 774, 780 (7th Cir. 2011). Washington does not allege that he was harmed by a policy, custom, or practice. Rather, he alleges that his providers *departed* from the policy requiring them to promptly schedule the surgery. In any event, Washington's own limited experience is insufficient for the Court to infer that a policy or widespread practice exists. "A naked allegation that a [corporation] has a practice of committing constitutional violations is a legal conclusion of *Monell* liability couched as a factual allegation and thus does not, on its own, state a *Monell* claim." *Austin v. Cook Cnty., Ill.*, No.  , 2024 WL 3649022, at *2 (7th Cir. Aug. 5, 2024).

For similar reasons, Washington does not state a claim against Health Services Administrator Ms. Scheiber or Health Services Administrator Jane Doe. It does not appear that these administrative officials had any involvement in Washington's care, and it has long been held that supervisors are not liable for the alleged misconduct of their employees because there is no supervisory liability under §1983. *Perez*, 792 F.3d at 781. In the absence of factual allegations to

support Washington's legal conclusion that these supervisors failed to train their employees, Washington fails to state a claim.

Washington also does not state a claim against Nurse Practitioner Katie based on allegations that she retaliated against him because he informed her on October 28, 2025 that he was "exercising his constitutional rights." To plead a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)). The Court cannot reasonably infer that Washington satisfies this standard. First, it is not clear what Washington meant by his statement that he was "enforcing his constitutional rights" and the Court will not speculate on this point. Second, it is not clear what deprivation he suffered. According to Washington, he spoke to Nurse Practitioner Katie *after* the delay following the specialist's initial referral, and he was seen by the orthopedist within weeks of the second referral. Accordingly, the delay at issue in this case could not have been motivated by protected activity that she did not know about. To the extent Washington is suggesting that she charged him $8.00 to fill a prescription that he believes he should not have been charged for, the Court cannot reasonably infer that a disagreement over the enforcement of a medication policy is a deprivation that would likely deter (undefined) First Amendment activity in the future. As Washington explains, he submitted an inmate complaint about the charge, but the charge was not reversed, suggesting that he misunderstands the medication policy.

Finally, Washington does not state an indemnification claim against Kenosha County under Wis. Stat. §895.46. According to Washington, Dr. Trottman, Nurse Natasha, and Nurse Practitioner Katie are employed by Vital Core Health Strategies, not Kenosha County. Accordingly, they do not appear to be eligible for indemnification by the State. If Washington learns during the course of litigation that any of them are employees of the State, he may renew his request to add this claim.

**IT IS THEREFORE ORDERED** that Washington's motion for reconsideration (Dkt. No. 12) is **GRANTED**. The Court's January 12, 2026 order dismissing this case and the judgment (Dkt. Nos. 10, 11) are **VACATED**.

**IT IS FURTHER ORDERED** that Washington's motion for leave to proceed *in forma pauperis* (Dkt. No. 4) is **GRANTED**.

**IT IS FURTHER ORDERED** that Washington fails to state a claim against Vital Core Health Strategies, Kenosha County, Ms. Scheiber, and Jane Doe, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that the United States Marshal shall serve a copy of the amended complaint and this order upon Nurse Practitioner Katie V, Dr. Trottman, and Nurse Natasha Villegas pursuant to Federal Rule of Civil Procedure 4. Washington is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2)–(3). Although Congress requires the Court to order service by the U.S. Marshals Service precisely because *in forma pauperis* plaintiffs are indigent, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The Court is not involved in the collection of the fee.

**IT IS FURTHER ORDERED** that Nurse Practitioner Katie V, Dr. Trottman, and Nurse Natasha Villegas shall file a responsive pleading to the amended complaint.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Washington is located.

**IT IS FURTHER ORDERED** that the agency having custody of Washington shall collect from his institution trust account the $262.05 balance of the filing fee by collecting monthly payments from Washington's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Washington is transferred to another institution, the transferring institution shall forward a copy of this Order along with Washington's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all

6

inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Washington is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin this 7th day of April, 2026.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

7